## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-62199-RNS

| | |
|---|---|
| FRANK BRADY, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| MEDTRONIC, INC. and | ) |
| MEDTRONIC SOFAMOR DANEK, | ) |
| USA, INC., | ) |
| | ) |
| *Defendants.* | ) |
| _____ | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

COMES NOW Plaintiff Frank Brady (Plaintiff), by and through his undersigned counsel, and pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1(c), respectfully submits this Memorandum in Opposition to Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. (Defendants') Motion to Dismiss the Third Amended Complaint.

Contrary to the claims in Defendants' Motion to Dismiss, Plaintiff's Third Amended Complaint states valid causes of action for fraud and breach of express warranty and punitive damages that are properly pled and fully in compliance with Rules 8 and 9 of the Federal Rules of Civil Procedure and are not expressly or impliedly preempted pursuant to 21 U.S.C. §§ 337(a) or 360k(a).

Therefore, and for the reasons more fully set forth below, Plaintiff respectfully requests that this Court enter an Order denying Defendants' Motion to Dismiss.

DATED:  January 28, 2015.

# TABLE OF CONTENTS

PROCEDURAL BACKGROUND ................................................................................... 1

ANALYSIS .................................................................................................................. 1

   I.   Plaintiff's fraud claims are not expressly preempted. ........................................ 1

      A.   There is no specific federal requirement that expressly preempts Plaintiff's claims. ....... 1

  II.   Plaintiff's fraud claims are adequately pleaded. ................................................ 5

      A.   Rule 9(b) standard ......................................................................................... 5

      B.   Plaintiff has sufficiently alleged Defendants' liability. .................................... 6

      C.   Plaintiff has sufficiently alleged reasonable reliance. .................................... 11

      D.   Plaintiff has properly stated a claim for fraud by omission. ......................... 15

  III.  Plaintiff has validly alleged his claim for breach of warranty. ......................... 18

CONCLUSION AND PRAYER ..................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alton v. Medtronic, Inc.,* 970 F.Supp.2d 1069 (D. Or. 2013) ................................................... 4, 13

*Aprigliano v. American Honda Motor Co., Inc.*, 979 F.Supp.2d 1331 (S.D. Fla. 2013) .............. 18

*Beavers-Gabriel v. Medtronic, Inc.*, 15 F.Supp.3d 1021 (D. Haw. 2014) ..................................... 4

*Brady v. Medtronic, Inc.*, 2014 WL 1377830 (S.D. Fla. Apr. 8, 2014) .................................. 1, 3, 4

*City of Fort Lauderdale v. Scott*, 773 F.Supp.2d 1355 (S.D. Fla. 2011) ....................................... 5

*Continent Aircraft Trust, 1087 v. Diamond Aircraft Indus., Inc.*,
2013 WL 2285539 (S.D. Fla. 2013) .............................................................................................. 9

*Discover Property and Cas. Ins. Co. v. Lexington Ins. Co.*,
664 F.Supp. 1296 (S.D. Fla. 2009) ............................................................................................... 9

*Duke v. Cleland*, 5 F.3d 1399 (11th Cir. 1993) ............................................................. 1, 17, 18, 19

*Durham v. Business Management Associates*, 847 F.2d 1505 (11th Cir. 1988) ............................ 5

*Eidson v. Medtronic, Inc.*, --- F.Supp.2d ---, 2014 WL 1996024
(N.D.Cal. May 13, 2014) ........................................................................................................ 4, 15

*Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ............. 1, 17, 18, 19

*F.D.I.C. v. Group One Mortg., Inc.*, 2013 WL 2035150 (S.D. Fla. May 14, 2013) ...................... 6

*F.W. Woolworth Co. v. Graham*, 257 S.W. 574 (Tex. Ct. App. 1923) ........................................ 12

*Financial Business Equipment Solutions, Inc. v. Quality Data Systems, Inc.*,
2008 WL 4753710 (S.D. Fla. Oct. 27, 2008) ................................................................................ 6

*Flamenbaum v. Orient Lines, Inc.*, 2004 WL 1773207 (S.D. Fla. Jul. 20, 2004) .................... 9, 10

*Great Florida Bank v.*
*Countrywide Home Loans, Inc.*, 2011 WL 382588 (S.D. Fla. Feb. 3, 2011) .............................. 12

*Gutter v. Wunker*, 631 So.2d 1117 (Fla. Dist. Ct. App. 1994) .................................................... 15

*Hosler v. Alcon Laboratories, Inc.*, 2012 WL 4792983 (S.D. Fla. Oct. 9, 2012) .................. 14, 15

*Houston v. Medtronic, Inc.,* 957 F.Supp.2d 1166 (C.D. Cal. 2013) .............................................. 4

*Hughes v. Kia Motors Corp.*, 766 F.3d 1317 (11th Cir. 2014) ..................................................... 13

*In re Engle Cases*, 767 F.3d 1082 (11th Cir. 2014) ..................................................................... 20

*In re Managed Care Litigation,* 150 F.Supp.2d 1330 (S.D. Fla. 2001) ......................................... 5

*In re Palm Beach Finance Partners, L.P.*, 517 B.R. 310 (S.D. Fla. 2013) ................................... 6

*In re Sahlen & Associates, Inc. Securities Litigation*, 773 F.Supp. 342 (S.D. Fla. 1991) ........... 12

*Jackson-Shaw Co. v. Jacksonville Aviation Authority*, 8 So.3d 1076 (Fla. 2008) ......................... 9

*K.G. ex rel. Garrido v. Dudek*, 839 F.Supp.2d 1254 (S.D. Fla. 2011) ......................................... 13

*Kashani-Matts v. Medtronic, Inc.*, 2013 WL 6147032 (C.D. Cal. Nov. 22, 2013) ...................... 14

*Knipe v. SmithKline Beecham*, 583 F.Supp.2d 602 (E.D. Penn. 2008) ........................................ 14

*Lamm v. State Street Bank & Trust Co.*, 889 F.Supp.2d 1321 (S.D. Fla. 2012) ...................... 6, 8

*Legg v. Voice Media Group, Inc.*, --- F.Supp.2d ---, 2014 WL 2004383
(S.D. Fla. May 16, 2014) .............................................................................................................. 10

*Littlebear v. Advanced Bionics, LLC*, 896 F.Supp.2d 1085 (N.D. Okla. 2012) ............................ 2

*Meyer v. Holley*, 537 U.S. 280, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) ..................................... 9

*Perez v. Nidek Co. Ltd.*, 711 F.3d 1109 (9th Cir. 2013) ................................................................ 2

*Philip Morris USA, Inc. v. Naugle*, 103 So.3d 944 (Fla. Dist. Ct. App. 2012) ....................... 4, 15

*Rembrandt Vision Technologies, L.P. v.
Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655 (M.D. Fla. 2012) ................................... 13

*Riegel v. Medtronic, Inc.* 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) ..................... 1, 2

*Royal Typewriter Co., a Div. of Litton Business Systems, Inc. v.
Xerographic Supplies Corp.*, 719 F.2d 1092 (11th Cir. 1983) .............................................. 18, 19

*Schouest v. Medtronic, Inc.*, 13 F.Supp.3d 692 (S.D. Tex. 2014) .................................................. 2

*Scovil v. Medtronic, Inc.*, 995 F.Supp.2d 1082 (D. Ariz. 2014) .............................................. 4, 15

*State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*,
557 So.2d 107 (Fla. Dist. Ct. App. 1990) .................................................................................... 18

*Talley v. Danek Medical, Inc.*, 179 F.3d 154 (4th Cir. 1999) ........................................ 10

*Tello v. Royal Caribbean Cruises, Ltd.*, 939 F.Supp.2d 1269 (S.D.Fla. 2013) ..................... 10, 11

*Timberlake v. Synthes Spine, Inc.*, 2011 WL 711074 (S.D. Tex. Feb. 18, 2011) .......................... 2

*Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 569 N.E.2d 875 (Ohio 1991) .............................. 10

*Vernon v. Medical Management Associates of Margate, Inc.*,
912 F.Supp. 1549 (S.D. Fla. 1996) ...................................................................... 9, 10

*Wolicki-Gables v. Arroa Int'l, Inc.*, 634 F.3d 1296 (11th Cir. 2011) ................................. 4

*ZC Ins. Co. v. Brooks*, 847 So.2d 547 (Fla. Dist. Ct. App. 2003) .................................... 15

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001) ...................................... 5

## Statutes

21 U.S.C. § 331 ....................................................................................... 3

21 U.S.C. § 333 ....................................................................................... 3

21 U.S.C. § 352 ....................................................................................... 3

21 U.S.C. § 360e ...................................................................................... 2

21 U.S.C. § 360i ...................................................................................... 3

21 U.S.C. § 360k ...................................................................................... 1

Fla. Stat. § 672.313 ................................................................................. 18

## Other Authorities

Brief for The United States as Amicus Curiae, Medtronic, Inc. v. Stengel (2014)
(U.S. Supreme Court No. 12-1351) ..................................................................... 2

## Regulations

21 C.F.R. § 808.1 ..................................................................................... 2

21 C.F.R. § 803.50 .................................................................................... 3

21 C.F.R. § 803.52 .................................................................................... 3

21 C.F.R. § 814.82 .......................................................................................................... 3

21 C.F.R. § 814.84 .......................................................................................................... 3

## PROCEDURAL BACKGROUND

Since Plaintiff's initial complaint was filed on October 9, 2013, it has been amended three times, in response to Defendants' motions to dismiss and this Court's orders. (Dkt. No. 1, 11, 23, 25, 28, 40, 41, 45, 48, 51, 64, 65). At issue herein is and Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (filed on December 23, 2014). This Court granted Plaintiff leave for additional time to file his opposition, through January 29, 2015. (Dkt. No. 68, 70, 77, 79)

## ANALYSIS

In deciding this motion to dismiss, this Court must "accept as true all of the factual allegations contained in the complaint." and construe them in the light most favorable to Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

**I.      Plaintiff's fraud claims are not expressly preempted.**

**A.      There is no specific federal requirement that expressly preempts Plaintiff's claims.**

The Food and Drug Administration (FDA) as authorized by the Medical Device Amendments of 1976 (MDA) to the Federal Food, Drug and Cosmetic Act (FDCA) regulates medical devices, including the Class III device at issue here. *Riegel v. Medtronic, Inc.* 552 U.S. 312, 315-318, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). When the FDA establishes specific requirements for a device, the MDA prohibits enforcement of any state law claims relating to a device's safety and effectiveness that are "different from or in addition to" those established under the FDCA. *Riegel*, 552 U.S. at 321-322; 21 U.S.C. § 360k(a)(2014).

1

During a "pre-market approval" process (PMA), the FDA evaluates these Class III devices and their labels for safety and effectiveness, and the requirements it imposes are sufficiently specific to have preemptive effect under the MDA. *Id.* at 318, 323; 21 U.S.C. § 360e(d)(2014).

However, other MDA and FDA requirements, such the post-market mandate to report data and make changes to labels *after* pre-market approval, are characterized by the agency as general provisions that do not have "preemptive force." Brief for The United States as Amicus Curiae, Medtronic, Inc. v. Stengel (2014)(U.S. Supreme Court No. 12-1351)(hereinafter "U.S. Brief") at 2-3, 9 *citing Medtronic, Inc. v. Lohr*, 518 U.S. 470, 501, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)(noting these regulations express only "generic concerns"); *see also* 21 C.F.R. § 808.1(d)(2013).

Plaintiff's state law fraud claims relate to Defendants' post-market, false reports of success with off-label (those not approved by the FDA) uses of the device, which are governed only by general regulations; therefore, as there is no "specific federal interest" touched upon by Plaintiff's state law claims, those are not preempted. *Lohr*, 518 U.S. at 500.

**B.    Plaintiff's state law fraud claims are not different from or in addition to federal requirements.**

Defendants cite no authority supporting their claim that the omissions alleged by Plaintiff are expressly pre-empted. Rather, all of their authority involves "failure-to-warn" cases that simply claim the use of rhBMP-2 and/or Infuse was off-label and not approved. *Perez v. Nidek Co. Ltd.*, 711 F.3d 1109, 1112, 1117-1119 (9th Cir. 2013); *Littlebear v. Advanced Bionics, LLC*, 896 F.Supp.2d 1085, 1091 (N.D. Okla. 2012); *Schouest v. Medtronic, Inc.*, 13 F.Supp.3d 692, 701 (S.D. Tex. 2014); *Timberlake v. Synthes Spine, Inc.*, 2011 WL 711074, *7 (S.D. Tex. Feb. 18, 2011).

Plaintiff's claim, on the other hand, is that Defendants intentionally omitted adverse event reports, misrepresented study data and skewed information in their published reports of medical trials of off-label uses of rhBMP-2 and/or Infuse in violation of both federal law and Florida's common law prohibiting fraud.

Device manufacturers have a duty to report and "provide such information" as the agency may "reasonably require" to assure a device remains safe and effective; this information includes adverse events as well as any data that "suggests" a device could have malfunctioned or contributed to a serious injury. 21 U.S.C. § 360i(a); *see also* 21 C.F.R. §§ 803.50, 803.52, 814.84. Manufacturers must also provide the FDA with accurate information about published reports in scientific literature. 21 C.F.R. §§ 814.82(a)(2), 814.84(b)(2). The failure of a manufacturer to provide this information violates the FDCA. *See* 21 U.S.C. §§ 331(e), 333(f)(prohibiting the failure to make required reports).

Furthermore, as this Court has previously noted, the FDCA also prohibits "false or misleading" statements and omissions in advertisements and other marketing materials, which presumably covers paid-for medical journal articles, as well. *See Brady v. Medtronic*, 2014 WL 1377830, *5, *7 (S.D. Fla. Apr. 8, 2014) *citing* 21 U.S.C. §§ 331(b), 333(a), (f), 352(a), (f)(1), (q).

Plaintiff has alleged specifically where Defendants have violated these federal requirements. [TAC ¶¶ 44-49, 64, 66, 67, 75-79, 87, 88, 91, 92, 95-98, 100, 101, 109, 110, 113-115, 118, 119, 121]

For example, in a 2002 publication, Defendants' agent, Dr. Boden, falsely stated "there were no adverse events" when using rh-BMP-2 in an off-label manner (posterolateral lumbar spine) and that the procedures were "100% successful," even though when later put under

independent scrutiny, adverse events of "greater magnitude" than traditional bone grafts were found; likewise, in the 2004 report of a 1999 study, Dr. Haid falsely wrote that no adverse events occurred and the "rh-BMP-formed bone [was] . . . not compressing neural structures" even though in 2002 one of the surgeons in that trial reported three patients who required four subsequent surgeries to repair "bony over-growth impinging on nerve roots." [TAC 75-79, 81-83]

Nonetheless, although these misrepresentations violate federal law, Plaintiff's claims are based on Florida's common-law, parallel duty that prohibits misleading statements and omissions: "[O]ne who undertakes to disclose material information has a duty to disclose that information fully." *Philip Morris USA, Inc. v. Naugle*, 103 So.3d 944, 946 (Fla. Dist. Ct. App. 2012). As this Court has already identified: "[T]his claim . . . based upon alleged misrepresentations and omissions made in promoting off-label use of Infuse . . . survives preemption." *Brady*, *supra*, *7. Other courts have agreed. *See Scovil v. Medtronic, Inc.*, 995 F.Supp.2d 1082, 1096 (D. Ariz. 2014); *Houston v. Medtronic, Inc.,* 957 F.Supp.2d 1166, 1179-80 (C.D. Cal. 2013); *Alton v. Medtronic, Inc.,* 970 F.Supp.2d 1069, 1097-98 (D. Or. 2013).

Note that unlike the cases cited by Defendants, Plaintiff's claims have nothing to do with Defendants' labeling of the device, but rather its post-market omissions and statements in medical journals. *Cf. Beavers-Gabriel v. Medtronic, Inc.*, 15 F.Supp.3d 1021, 1036 (D. Haw. 2014)(noting that claims based on omissions in *labeling* are expressly preempted). As both the FDCA and an independent, parallel, "genuinely equivalent" state law each require no more than the full disclosure of information, Plaintiff's claim is not preempted. *See Brady*, 2014 WL 1377830 at *7, *citing Wolicki-Gables v. Arroa Int'l, Inc.*, 634 F.3d 1296, 1300 (11th Cir. 2011);

*Eidson v. Medtronic, Inc.*, --- F.Supp.2d ---, 2014 WL 1996024, *15 (N.D.Cal. May 13, 2014); *Houston*, 957 F.Supp.2d at 1179-80.

## II.     Plaintiff's fraud claims are adequately pleaded.

### A.     Rule 9(b) standard

Under the federal rules, fraud claims must be pled with particularity. Fed. R. Civ. Proc. 9(b). The purpose of the rule is to "alert[] defendants to the precise misconduct with which they are charged and protect [them against] spurious charges of . . . fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

The rule is satisfied where the complaint specifically states what was said (or not said), when and where, the "manner in which it misled the plaintiff," and what the defendants gained. *Ziemba*, 256 F.3d at 1202 (citations omitted). Since Rule 9(b) is "not intended to abrogate the concept of notice pleading," in addition to precise statements, "alternative means are also available . . . [and these include] allegations of fraud describing the nature and subject of statements . . . even where the precise words used were not alleged." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) *citing Durham v. Business Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988); *City of Fort Lauderdale v. Scott*, 773 F.Supp.2d 1355, 1363 (S.D. Fla. 2011). Accordingly, where a complaint provides the date of the representation, its substance, how it worked a fraud and the plaintiff's reliance, even without providing the exact statements made, it was deemed sufficient to meet Rule 9(b)'s particularity requirements. *See In re Managed Care Litigation,* 150 F.Supp.2d 1330, 1347-1348 (S.D. Fla. 2001)

Likewise, where a complaint, without providing the exact statements made by the defendant and its agents, "*explained* the omissions and material misrepresentations" and their

content, as well as who said it where and when, the complaint was deemed "sufficient to satisfy Rule 9(b)." *Financial Business Equipment Solutions, Inc. v. Quality Data Systems, Inc.*, 2008 WL 4753710, *2 (S.D. Fla. Oct. 27, 2008)(emphasis added).

Similarly, where a complaint identified the mechanism of the fraud, the documents that contained the misrepresentations, and the date made as well as Plaintiff's reliance, Rule 9(b) was satisfied. *F.D.I.C. v. Group One Mortg., Inc.*, 2013 WL 2035150, *4 (S.D. Fla. May 14, 2013).

**B.   Plaintiff has sufficiently alleged Defendants' liability.**

Defendants' argument to the contrary, Plaintiff need not establish any source of vicarious liability as Defendants, who had actual knowledge that the opinion leaders' published studies contained fraudulent misrepresentations and omissions (because they had directed and paid for them), are independently liable for those statements. *See In re Palm Beach Finance Partners, L.P.*, 517 B.R. 310, 346 (S.D. Fla. 2013); *Lamm v. State Street Bank & Trust Co.*, 889 F.Supp.2d 1321, 1332 (S.D. Fla. 2012)(requiring a showing that "the aider and abettor substantially assisted or encouraged commission of the breach or fraud.")

Defendants' substantial assistance and encouragement included a lot of money, to wit: (1) the 10 original rhBMP-2 [Infuse] trials were funded, at least partially, by Defendants; (2) the median financial relationship between Medtronic and the opinion leader-authors of 12 of the first 13 original studies of rh-BMP and/or Infuse was in the range of $12,000,000-$16,000,000; (3) the authors of each study with 20+ patients had "financial associations" with Medtronic of at least $1,000,000; and (4) for those studies of 100+ patients, the financial association was more than $10,000,000 each. [Third Amended Complaint (TAC) ¶¶ 61, 62, 63]

More particularly, Defendants paid several of its study authors, opinion leaders Drs. Kuklo, Boden, Haid, Zdeblick, Burkus, Dickman, Gornet, Heller, Rodts, Jr. and Sonntag, at least

$800,000, $28,000,000, $25,000,000, $34,000,000, $6,000,000, $3,000,000, $3,500,000, $1,000,000, $3,000,000 and $22,000,000, respectively, [TAC ¶¶ 69, 71, 74, 80, 86, 89, 103, 104, 105]

Likewise, Drs. Glassman, Dimar and their business were paid well in excess of $60,000,000 by Defendants between 1996 and 2010, while Dr. Dawson was paid (personally and to support research), at least $12,000,000, and Dr. Transfeldt, together with a business he had an interest in, was paid more than $3,500,000. [TAC ¶¶ 93, 99, 108]

These payments funded articles published in medical journals that downplayed and outright omitted adverse events from studies of off-label rhBMP and/or Infuse use. In addition to the misrepresentations identified above, note that of the 780 patients that participated in the early trials, not one of the later-found adverse events were reported in the opinion leaders' articles; likewise, of 13 studies of rhBMP and/or Infuse published by Dr. Burkus, although he failed to report *any* adverse events, many were later found in an independent review, and in total, the opinion leaders' underreporting was so severe that ultimately 315 previously unreported adverse events were later found. [TAC ¶¶ 64, 90, 129-134] These included articles on studies of off-label posterolateral lumbar rhBMP and/or Infuse use published by Drs. Glassman, Dimar and Dawson in 2007 and 2009, where the independent review found a failure to report malignancy and morbidity that was "nearly three times" more than that seen in the control group. [TAC ¶¶ 95-98, 100-101]

Obviously, Defendants were aware of these adverse events from as early as 1999 when Dr. Haid's study was suddenly halted due to, in part, 600% more ectopic bone formations, unresolved osteolysis, subsidence and implant migration in 50-70% of the PLIF patients, and between 200-400% greater occurrence of radiculitis. [TAC ¶ 109] It was from this trial that Dr.

David Malone had the three patients who required four surgeries to repair such uncontrolled bone growth that even "the secretaries in our clinic could look at the X-rays and tell who got the BMP." [TAC ¶¶ 110] In fact, Defendants were aware that a variety of off-label uses of Infuse were causing adverse events, including when it was used in the cervical spine. [TAC ¶¶ 118-121]

Rather than simply aiding and abetting, Defendants in fact guided the fraudulent deception. The Director of Technology Management in Medtronic's Biologics Marketing Department, Dr. Julie Bearcroft, made "significant changes" to one of opinion leader Dr. Burkus' articles, removing "significant detail" of "adverse events," including a "detailed table of adverse events and substituting a statement of equivalency of adverse events between two study groups." [TAC ¶ 66]

This was not an isolated incident, as noted by a Senate investigation that found in 2006 that Defendants were clearly in control of the opinion leaders' work: "Medtronic edited draft publications to stress the pain patients experienced from undergoing a bone graft procedure instead of receiving InFuse," and in those published studies, the authors "hypothesized" more serious impairment from bone grafts over Infuse, despite the fact that the data showed the "rhBMP-2 groups were worse or no better." [TAC ¶ 136-138]

Likewise, Medtronic's Senior Vice President of Clinical and Regulatory Affairs, Rick Treharne, instructed Dr. Burkus to sign and send a letter, prepared by Treharne, to The Spine Journal in an attempt to get it to reconsider publishing an article that had previously been rejected by peer-reviewers as being clearly biased; in that ghostwritten letter, Dr. Burkus forwarded Treharne's false statement that three of the co-authors were independent reviewers, despite that the fact that two of them were Drs. Haid and Burkus. [TAC ¶¶ 68, 69]

Clearly, Plaintiff has alleged sufficient assistance, encouragement and control to establish Defendants' independent liability for the fraud. *Lamm*, 889 F.Supp.2d at 1332. In addition, these same facts would also establish Defendants' vicarious liability, were that required. For example, the allegations support a claim that Defendants and their opinion leaders were joint venturers. *See Jackson-Shaw Co. v. Jacksonville Aviation Authority*, 8 So.3d 1076, 1089 (Fla. 2008)("A joint venture is created when two or more persons combine their [resources] . . . in conducting some particular line of trade or for some particular business deal.") Under Florida law, "each joint venturer is vicariously liable for the acts of a servant working on behalf of the joint venture." *Discover Property and Cas. Ins. Co. v. Lexington Ins. Co.*, 664 F.Supp. 1296, 1301 (S.D. Fla. 2009)

Of course, the allegations also establish vicarious liability via an agency relationship. *See Meyer v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003); *Vernon v. Medical Management Associates of Margate, Inc.*, 912 F.Supp. 1549, 1556 (S.D. Fla. 1996)("If the [intentional] tort is activated by a purpose to serve the employer, then the employer can be held responsible.")

This agency relationship, as well as the fact that the fraudulent statements were within the scope of that agency, was alleged throughout the complaint; in addition to the paragraphs referenced above, in paragraphs 8, 92, 167, 178 and 197, as well. Defendants' Seventh Circuit authority to the contrary, under well-established legal principles, Plaintiff need demonstrate nothing more.

"Plaintiffs are not required to prove agency in their pleading. The existence of the alleged agency relationship is usually a question of fact that is not properly considered on a motion to dismiss," even where fraudulent misrepresentation is pled. *See Flamenbaum v. Orient Lines,*

*Inc.*, 2004 WL 1773207, *9, n. 5 (S.D. Fla. Jul. 20, 2004); *Continent Aircraft Trust, 1087 v. Diamond Aircraft Indus., Inc.*, 2013 WL 2285539, * 4 (S.D. Fla. 2013)(holding that even where allegations of agency are intertwined with those of fraud, Rule 9(b)'s heightened pleading requirement did not apply).

Nonetheless, Plaintiff has established that relationship, which requires 1) acknowledgement by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the action of the agent. *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F.Supp.2d 1269, 1278 (S.D.Fla. 2013). As such, an agency relationship may be found "where the principal exercised substantial control over the agent's actions," alone. *Legg v. Voice Media Group, Inc.*, 20 F.Supp.2d 1370, 1377 (S.D. Fla. 2014).

The allegations described herein demonstrate that Defendants directed (and paid) the opinion leaders to hide adverse events and present positive studies of off-label Infuse; the agent's acceptance is seen in the published, fraudulent study reports, and Defendants' control is seen not only in their receiving the desired outcome, but also through direct interference with opinion leaders' reports. Likewise, the argument that the opinion leaders' misrepresentations and omissions, about the product Defendants' sell, was not within the scope of that agency is absurd, particularly where the allegations claim a fee paid in exchange for conduct, which may establish an agency relationship.  *See Vernon*, 912 F.Supp. at 1556; *Flamenbaum*, 2004 WL 1773207, at *9, n. 5.

On this fee issue, Defendants authority is inapposite. *See Talley v. Danek Medical, Inc.*, 179 F.3d 154, 164 (4th Cir. 1999)(where the consultant's relationship with the manufacturer was on a product different from the one at issue in the suit); *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 569 N.E.2d 875 (Ohio 1991)(where the doctor only received a small payment ($15) for each

patient he enrolled in a study, and no evidence of controlling the doctor's performance was in evidence). Rather, the allegations here are clear that the opinion leaders' and Defendants' relationship was about the product at issue in this suit, and that Defendants' controlled the paid doctor's statements about the safety and efficacy of the off-label use of rhBMP and/or Infuse. Taken together, clearly these allegations meet the standard of acknowledgement, acceptance and control, sufficient to establish an agency relationship. *Tello*, 939 F.Supp.2d at 1278;

Therefore, Plaintiff has clearly established Defendants' culpability for the fraudulent statements.

### C.   Plaintiff has sufficiently alleged reasonable reliance.

Allegations that Plaintiff and his surgeon, Dr. Amos Dare, relied on Defendants' misrepresentations (and lack of reported adverse events) that off-label use of rhBMP-2 and/or Infuse was safe and effective decorate Plaintiff's complaint, including in ¶¶ 9, 11, 85, 141-143, 180-182, 189, and 210. Specific allegations include that "Plaintiff's spine surgeon . . . relied on the lack of any adverse events in those publications [of the opinion leaders] . . . false statements and material omissions . . . [and] Plaintiff and Plaintiff's physicians were justified in relying, and did rely on Defendants' concealment of information and misrepresentations about the safety risks . . . ." [TAC ¶¶ 181-182, 189]

These also include the statement that "Dr. Amos Dare, who performed Plaintiff's spine surgery, relied on the statements and omissions of Dr. Boden, Dr. Haid, Dr. Dimar, Dr. Glassman and others when deciding which procedure to use for Plaintiff's spine surgery." [TAC ¶ 141] Plaintiff also alleges that "Dr. Dare relied on the omission of adverse events from the Medtronic-sponsored studies of off-label procedures . . . when deciding which procedure to use for Plaintiff's spine surgery," and that he "relied on the statements, falsely hyping the pain of

traditional bone graft procedures, when deciding that off-label use of Infuse and rhBMP offered Plaintiff the best option . . . ." [TAC ¶¶ 142, 143]

The statements and omissions of each of these agents of Defendants are identified by content, journal or other outlet where published, and date of publication. [TAC ¶¶ 47-50, 66, 72, 76-79, 81-83, 88, 91, 95-98, 100-102, 109-110]

"A court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *In re Sahlen & Associates, Inc. Securities Litigation*, 773 F.Supp. 342, 352 (S.D. Fla. 1991). As such, allegations of reliance will be satisfied when they "provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud." *Id.* Plaintiff has identified the speaker, the statement's content, when it was made and where, and how Plaintiff and his physician relied on those statements sufficient to meet the requirements of Rule 9(b). *In re Sahlen*, 773 F.Supp. at 352 (noting that the rule is satisfied where Plaintiff states "which particular documents were read and reasonably relied upon by which Plaintiffs.")

Defendants' argument to the contrary, the handful of allegations prefaced with the convention, "it is believed," does nothing to detract from the specificity of reliance pleading in the Third Amended Complaint. *See Id.*; *F.W. Woolworth Co. v. Graham*, 257 S.W. 574 (Tex. Ct. App. 1923)("The portion of the allegations complained of, plaintiff's belief . . . is surplusage, and is not the fact charged. . . .") Furthermore, since "supporting facts on which the belief is founded" are also alleged, even an "information and belief" pleading should be sufficient. *Great Florida Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, *5 (S.D. Fla. Feb. 3, 2011).

Note, too, that the pleadings establish the reasonableness of Plaintiff's and Dr. Dare's reliance. The misrepresentation that off-label use of rhBMP-2 and/or Infuse was safe and

effective was widely disseminated and spanned each off-label use to which the device was put, from the neck to the shin (including the lower back), and included approaching both from the back and the side.

That these misrepresentations and omissions were widely credited with showing that all off-label uses of rhBMP-2 and/or Infuse were safe and effective is borne out by the allegations, including that not a single adverse event was reported (although many occurred) for the first 780 patients; according to the authors of the 2011 Spine Journal independent review, together these glowing reports deceived the entire industry: "many of us read early articles on off label use which showed the results were excellent . . . in PLIF . . . surgery," and that this "promoted widespread and poorly considered . . . off-label use." [TAC ¶¶ 64, 85, 131]

Note, too, that these misrepresentations were not made in obviously paid advertisements, but rather in peer-reviewed, well-respected journals, a fact that further demonstrates the reasonableness of that reliance. *See K.G. ex rel. Garrido v. Dudek*, 839 F.Supp.2d 1254, 1266 (S.D. Fla. 2011)(noting that where experts in the field attest to a peer-reviewed article's reliability, reliance thereon is reasonable). *See also Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328 (11th Cir. 2014)(noting that whether or not an expert's belief or theory has been subjected to peer-review a primary factor in determining its reliability); *Alton*, 970 F.Supp.2d at 1098 (noting that Alton's allegation that his physician reasonably relied on similar misrepresentations was sufficiently pled under Oregon law).

Clearly, then, if peer-review is a sufficient factor as to render a doctor's expert opinion in court reliable, it follows that it is reasonable for a doctor to rely on the same information when determining a course of treatment. *See Rembrandt Vision Technologies, L.P. V. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 665 (M.D. Fla. 2012)(evaluating the reliability of a

13

doctor's expert opinion); *Hosler v. Alcon Laboratories, Inc.*, 2012 WL 4792983, at \*3-4 (S.D. Fla. Oct. 9, 2012)(denying a motion to dismiss and finding reliance on statements of safety and efficacy of off-label use sufficiently pled); *Knipe v. SmithKline Beecham*, 583 F.Supp.2d 602, 623-23 (E.D. Penn. 2008)(holding the issue of a doctor's reliance on off-label promotion of a drug sufficiently reasonable to survive summary judgment)

Ironically, Defendants argument that Plaintiff's reliance was unreasonable, since the label warned against the use, is subverted by Defendants' own, long-standing, well-funded and ubiquitous campaign that promoted *off-label* use. Likewise, Defendants' argument that Plaintiff should be held, as a matter of law, to a standard to have found the two lone voices challenging off-label use of Infuse (one in 2006 and one in 2008) in the midst of the din created by their opinion leaders' numerous studies is absurd.[1]

Similarly, Defendants present no authority for their assertion that Plaintiff and his surgeon's reliance on their misrepresentations that off-label use of rhBMP and/or Infuse was safe and effective in every procedure tried is not sufficiently related to support a claim. The complaints referenced in the cases cited in Defendants' memorandum are inapposite, and certainly did not establish the full array of reliance set out in the Third Amended Complaint. *See e.g. Kashani-Matts v. Medtronic, Inc.*, 2013 WL 6147032, \*5 (C.D. Cal. Nov. 22, 2013)(where the only specific opinion leader alleged was Dr. Kuklo, and procedure for the shin bone).

Rather, well-settled authority supports Plaintiff's claim that this reliance was reasonable, particularly given the fact that Defendants' false claims of safety and efficacy span *all* off-label uses of rhBMP and/or Infuse, including those from posterior, PLIF and posterolateral

---

[1] Defendants are speaking out of both sides of their mouths. From the one side, they claim that Dr. Dare cannot be determined to have heard and relied on the 13-plus articles promoting off-label use of rhBMP and/or Infuse, but from the other, they claim that he must and should have heard the two articles challenging its safety.

approaches. *See Hosler,* 2012 WL 4792983, at *11. *See also Scovil.*, 995 F.Supp.2d at 1097; *Eidson,* 2014 WL 1996024 at *15.

Furthermore, in the Third Amended Complaint, Plaintiff has sufficiently identified the procedure he had: "posterior-approach lumbar fusion at levels L5-S1" using Infuse without an LT-Cage. [TAC ¶ 140] Defendants' objections to the contrary, clearly they have been provided sufficient detail to be apprised of the misconduct charged. *Hosler*, 2012 WL 4792983, at *11.

**D.      Plaintiff has properly stated a claim for fraud by omission.**

Defendants incorrectly state that a fiduciary relationship is required to support a duty to disclose under Florida law. Rather, Florida imposes the duty on anyone "who undertakes to disclose material information," that they must "disclose that information fully." *ZC Ins. Co. v. Brooks*, 847 So.2d 547, 551 (Fla. Dist. Ct. App. 2003); *Gutter v. Wunker*, 631 So.2d 1117 (Fla. Dist. Ct. App. 1994); *Naugle*, 103 So.3d at 946 ("it is immaterial whether it passes through a direct or circuitous channel in reaching [plaintiff], provided it be made with the intent that it shall reach him and be acted on by the injured party.")

Clearly Defendants intended the omission of adverse events from the study reports would encourage surgeons like Dr. Dare to perform more off-label procedures like that done on Plaintiff, and this is sufficiently pled to support Plaintiff's claim. *Id.*

Defendants' remaining arguments about Plaintiff's pleading of omissions are equally baseless. As identified above, in the complaint Plaintiff identified multiple places where the opinion leaders reported "no adverse events" while later independent reviews found them to have existed. [TAC ¶¶ 44-49, 64, 66, 67, 75-79, 87, 88, 91, 92, 95-98, 100, 101, 109, 110, 113-115, 118, 119, 121] Therefore, despite Defendants' claim that the articles provided sufficient information about adverse events to have put Plaintiff and his surgeon on notice, this is belied by

the reports and statements of the independent reviewers, including those in 2013 who found "early journal publications misrepresented the effectiveness and harms through selective reporting . . . and underreporting," of at least 315 adverse events. [TAC ¶¶ 132, 134](Ex. B, Rongwei Fu, PhD, et al., *Effectiveness and Harms of Recombinant Human Bone Morphogenetic Protein-2 in Spine Fusion*, 158 Annals of Internal Medicine (12) 890 (June 18, 2013)).

Likewise, another independent reviewer from 2011 noted that "greater pain and functional impairment [caused by rhBMP and/or Infuse] . . . was not discussed in any of the published studies despite being evident . . . ." [TAC ¶ 102] (Ex. A, Eugene J. Carragee, M.D. et al., *A critical review of recombinant human bone morphogenetic protein-2 trials in spinal surgery: emerging safety concerns and lessons learned*, 11 The Spine Journal 472 (June 2011). Dr. Carragee also reported that of those 13 early articles by Drs. Boden, Burkus, Haid, Dimar, Glassman and company, no (zero) adverse events were reported for the 780 patients. [TAC ¶ 64] (Ex. B, p. 472-73)

In fact, although Defendants cite the 2004 Haid article on the 1999 PLIF procedure study as an exemplar of disclosure and veracity, the documents show that it was, in fact, fraudulently misrepresentative of the study results. Consider that although Haid reported the existence of "events" and new bone formation, none of those events was identified as "adverse," and the fact that the bone formation was uncontrolled and required reoperation was omitted, as were the adverse effects on patient outcomes. Rather than disclosure, that paper contained the false statements: "rhBMP-formed bone occurred predictably . . . not compressing neural structures," "no patient required reoperation because of an adverse event related to BMP," and that the bone formation had "no discernible effect on patient outcomes."[2] [TAC ¶¶ 46, 47, 48, 49, 81, 82, 83]

---

[2] That these statements were false when made cannot reasonably be refuted: Plaintiff alleged (with citations) that in 2002 Dr. David Malone had three patients who required four subsequent

Thus, despite Defendants' claim, when the Haid article is viewed "holistically and in its entirety," that he made several materially false and misleading statements and omitted material information is without question.

Regarding Dr. Dawson's 2009 article about a posterolateral procedure, he reported "the absence of severe device-related adverse events [and] the absence of a second surgical procedure," and Dr. Carragee found that, Defendants' claim to the contrary, no adverse events were reported in that article, although almost "three times" as many adverse pain events were seen in the rhBMP group. [TAC ¶¶ 100, 175] (Ex. C, Edgar Dawson, et al., *Recombinant Human Bone Morphogenetic Protein-2 on an Absorbable Collagen Sponge with an Osteoconductive Bulking Agent in Posterolateral Arthordesis with Instrumentation*, 91 J. Bone & Joint Surgery 1609 (2009); Ex. A, at 473) That no adverse events were reported by Drs. Boden and Dimar is supported by the independent reviews as well as Plaintiff's pleadings. [TAC ¶¶ 75-79, 96-98]

Clearly Plaintiff's allegations are not contradicted by the actual documents, but borne out by them, and as such, they should be taken in the light most favorable to him. *Erickson*, 551 U.S. at 94; *Duke*, 5 F.3d at 1402.

Likewise, Defendants' "total mix" argument is equally unconvincing. Plaintiff has sufficiently alleged that the omissions were material, if for no other reason than the fact that the entire field of spine surgery found them so. [TAC ¶¶ 131, 167, 168, 182, 190] Similarly, and Defendants' argument to the contrary, Plaintiff has alleged that he and Dr. Dare reasonably relied on the omission of any adverse events from the specifically-identified published studies, as well as specific misrepresentations in those studies, when deciding on Plaintiff's surgery, and that it

---

surgeries to "clear excessive bone growth" that was "impinging on their nerve roots." [TAC ¶¶ 46, 47, 110] (Ex. A, p. 481) Even if, somehow, those complications did not arise within 24 months, Dr. Haid published his article *two years* after Dr. Malone testified to the FDA. [Ex. A. p. 480]

would not have been performed had the adverse events been reported. [TAC ¶¶ 44-49, 64, 66, 67, 75-79, 87, 88, 91, 92, 95-98, 100, 101, 109, 110, 113-115, 118, 119, 121, 141-143, 145, 146, 147, 148] Again, taking these allegations in the light most favorable to Plaintiff, the alleged omissions must be seen as material. *Erickson*, 551 U.S. at 94; *Duke*, 5 F.3d at 1402.

## III.   Plaintiff has validly alleged his claim for breach of warranty.

Under Florida law, a seller creates an express warranty with "any affirmation of fact or promise . . . to the buyer which relates to the goods  . . . [and a]ny description of the goods . . . that the goods shall conform to the description." Fla. Stat. § 672.313(1)(a)(b) (West 2014).

These affirmations and descriptions may be made in a variety of publications, and "may become a part of the contract of sale and constitute an express warranty for breach of which the seller will be liable for damages to one who, in making the purchase, relies thereon to his injury." *State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*, 557 So.2d 107, 108 (Fla. Dist. Ct. App. 1990); *Aprigliano v. American Honda Motor Co., Inc.*, 979 F.Supp.2d 1331, 1341 (S.D. Fla. 2013)("Statements made in promotional materials, advertisements, and brochures may be sufficient to create an express warranty if the buyer relies on those statements in making his purchase.")

> [T]he decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment *on a matter of which the seller has no special knowledge*. . . .

*Royal Typewriter Co., a Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983)(emphasis added)(holding that statements such as the "useful life of ten years," and "maintenance factor [at] . . . 1/2 cent per copy" were "affirmations which give rise to express warranties.")

In his Third Amended Complaint, Plaintiff has alleged that Defendants, through their opinion leaders, had material information, only available to them, about adverse events that they hid, while at the same time made express statements that off-label use of rhBMP and/or Infuse was safe and effective in all tested procedures, including those on the lumbar spine from the posterior and posterolateral approach. [¶¶ 44-49, 64, 66, 67, 75-79, 82, 87, 88, 91, 92, 95-98, 100, 101, 109, 110, 113-115, 118, 119, 121, 128] Plaintiff specifically identified several statements that comprised an express warranty including from the Haid article: "bone formation in the spinal canal does not appear to have discernable effect on patient outcomes," "no complications attributable to the rhBMP-2," "no adverse effects directly related to the rhBMP-2," "100% successful bone induction with rhBMP-2," "not compressing neural structures," "confirm the safety," and "no adverse event . . . specifically attributed to the use of rhBMP-2." [TAC ¶¶ 198-201]

Defendants cannot claim that they did not have special knowledge about the accuracy of these statements, as their falsity only came to light years later when Dr. Carragee and Dr. Fu began their independent reviews in 2011 and 2013; therefore, these statements precisely fit the definition of an express warranty. *See Royal Typewriter*, 719 F.2d at 1100.

Likewise, their argument that the warranty disclaimer on the packaging justifies dismissal of this count is not supported. Plaintiff's claim is premised on their post-market "express warranties made to the medical community regarding the safety [and efficacy] of non-approved applications of the protein component of the Infuse device," and as such they are outside of "the scope of the disclaimer contained in the FDA-mandated labeling." *See Alton*, 970 F.Supp.2d at 1104-05. Clearly, taking the facts in the light most favorable to Plaintiff, he has stated a valid claim for breach of an express warranty. *Erickson*, 551 U.S. at 94; *Duke*, 5 F.3d at 1402.

## CONCLUSION AND PRAYER

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint should be denied. If any deficiency remains in the pleading, Plaintiff should be granted leave to amend. *See In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014)("district courts should liberally grant leave to amend when the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief.")

Respectfully submitted,

Law Offices of
Robert J. Fenstersheib & Associates, P.A.
520 West Hallandale Beach Blvd.
Telephone: (954) 456-2488
Facsimile: (954) 252-4676


/s/ Charles Mindlin, Esq._____
Charles Mindlin, Esquire
Florida Bar No: 182765
Cmindlin@fenstersheib.com
Tammy@fenstersheib.com


## CERTIFICATE OF SERVICE

I hereby certify that, on January 28, 2015, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/ Charles Mindlin
Charles Mindlin